Mr. Curtis, may it please the court, all counsel, my name is David Curtis. I represent the petitioner today, Chick-fil-A Properties, seeking review of an unfair labor practice finding of the National Labor Relations Board, and we seek to have the board's order set aside today. Part of it, right? You agree on the written warning? We do. Proceed. Thank you, Your Honor. And so we seek to have the February 13, 2017 decision order to the Really briefly, some of the more salient facts in the case I'd like to use to stage my time today. Chick-fil-A Properties is a small employer in Dubuque, Iowa. They employ five to eight, mostly heavy equipment mechanics, but some runners, some lesser positions. And what they pretty much do is they service the heavy equipment owned by a related business, Chick-fil-A Excavating Company, also located in Dubuque. And the point has to be made that Chick-fil-A Excavating Company has had a 50 plus successful year, a relationship with over four trade unions, Your Honor. No past unfair labor practices, no past squabbles with the unions. Really, they've got a clean, clean record and they're proud of it. They work with the Teamsters, laborers, operators, and the Carpenters Union. Now, this case sets off in April 2015 when Teamsters Local 120 files an election petition with the NLRB. And the company, Chick-fil-A Properties, gets the notice. And although Daryl Golley, the complainant in this case, was an election observer during that election in May of 2015, there was no company opposition. The company didn't hire any persuaders. They didn't mount an aggressive management campaign like in Rightline the management did. They fought tooth and nail the union. In this case, opposite, Vanessa Budkey, the union coordinator, called or sent a notice to the company. It was wrong. It had the wrong information on it. The general manager of Chick-fil-A Properties called Ms. Budkey and told her, hey, you've got the wrong employer and you've got the wrong name on this notice. And she said, oh, we're sorry. Would you like us to reschedule the May 2015 election? Which, in this world, is manna from heaven from an employer's standpoint because they want the additional time to regroup, to apply their arguments to their staff and their employees. The general manager of Chick-fil-A Properties says, no need. We don't. It doesn't bother us. Let's have the election when you schedule it. And so they did not oppose Teamster's local 120 coming in in this particular instance. Soon after the uncontested election, the general manager started receiving complaints that Mr. Ghali was harassing his employees over and over again and repeated. It did not discipline Mr. Ghali when he received those complaints. What they did is they went to the labor attorney they were working with at the time, Mr. Reed, and they asked Mr. Reed to reach out to his contemporary on the other side of the table, Dennis Saylor, the business agent, and say, hey, could you ask Daryl Ghali to stop bugging people at work? Dennis Reed did, yet the harassment continued. And so then we come to this August 17, 2015 letter. And even though we're not contesting it, the Nichols decision of this court says, and maybe the Carleton College year 2000 decision also says, when you're reviewing a record for substantial evidence to see if substantial evidence supports the board's decision, you have to take a close look at the strengths and weaknesses of the inferences that the board made that there was an anti-union animus supporting an adverse employment decision. So look at the August 17, 2015 letter, which plays and figures prominently in the board's case. Before any inferences of an anti-union animus can be drawn from that inartfully broadly worded letter, we need to understand its context. The record is replete with employees coming to management saying, we walk around the whole shop to avoid Daryl Ghali's harassment. Three times a week, Daryl Ghali harasses me, interrupts my job. Daryl Ghali calls us effing snitches. Daryl Ghali made the come at me move at me, just like the complainant in the Nichols case with the thumb to the throat move. So these are the things. No contemporary discipline, though, right? No contemporary records and responses, the stuff you're talking about. They didn't counsel Ghali, didn't paper the record, the standard stuff? What they tried to do, Your Honor, is they tried to work through the union to counsel him. And the salient point there is even Dennis Saylor, after receiving the August 17th letter, although he didn't necessarily agree with all the underlying conduct that was complained about, he did not regard anything actionable about the letter or the complaints about harassment on the job. Again, letter, inartful, no doubt. Overbroad, no doubt. What about the standard that was applied? There's some discussion about whether the board ultimately applied the right standard. Yes. Our Nichols case talks about this but-for causation, but then seems to backtrack a little bit on that requirement in a subsequent opinion, sort of saying, well, that can't quite be it. What is your view on how the board and ALJ actually applied the right-line standard as glossed by our case law? Thank you, Your Honor. It's the petitioner's contention that they misapplied the burden and the burden-shifting standards of the right-line case. So help me specifically, just getting right to, if you can just zero in on, where exactly did the error occur in your view? It occurred where the board failed to find a logical nexus between the alleged protected union activity on the one hand and then the adverse employment action on the other. There were no findings associated with that. We argued in front of the board, you never should have shifted the right-line burden. Like the burden of persuasion never, the burden of production never should have shifted to Chick-fil-A properties. And where we think that the board erred, and a word about Nichols. Nichols did not introduce but-for causation. Right-line itself, a careful reading of right-line, specifically says, the ultimate question of a determining causal link between bad motive and the discharge is a burden of persuasion that remains always with the general counsel. So logically, there needs to be factual findings by the board applying a right-line analysis that there are some facts that support the general counsel's prima facie case and what... A motivating factor. Yes. So you're not saying that there had to be a but-for in that initial prima facie? Correct. If we use that. Right. That's at the end of the analysis. The burden of persuasion never changes. But at that point, there needs to be some evidence of but-for so that the burden shifts and then the employer can make out its legitimate non-discriminatory case. Can we look at the record and say, well, maybe, I think we have at least one case where we've sort of said, well, it looks like the standard wasn't precisely applied as a legal matter, but it's there in the record, and therefore, we can affirm the petition. What's your view on that? Is there enough here, or is that even a procedure we can undertake? I think your suggestion really is coming from the kind of the dissenting board member, Ms. Gamara's note, the kind of gloss, the ALJ's decision where he makes that very point. He says, look, I think the ALJ and the board got it wrong when they just relied on, hey, we've got protected conduct, and some evidence of animus, we're done. Ms. Gamara says, well, no, they got the burden wrong. They should have found that the protected union activity was the motivating cause of the adverse employment action. So to get to your question, he could have resolved it at that point by making additional findings of action, and this is how I think the dots were connected in this case. He didn't. Even the dissenting judge didn't make. So if the court finds that the error was not so great as to set aside the board's finding, then we would concede that one of the avenues that I think Judge Malloy laid out in his Nichols decision would be to remand, and it's an option that the government said that they would be amenable to in their note 16 in their brief that would be possible. The remand would look like this. It would remand back to the board for a specific finding on a causal connection between the alleged protected union activity and the termination in this case. As far as transportation management, do you believe the standard is, whether it's in the general counsel's burden, a substantial or motivating factor? Do you believe that's the test? You used that term with Judge Kelly. I mean, that's overall the general. It needs to be a motivating factor, but in the motivating or substantial factor, there still needs to be some logical causation, and we're not saying that in the prima facie case there needs to be but for the case is over. No, no, no, no, but there needs to be some findings. There needs to be some evidence, and we're saying on this record the standard was misapplied, and the factual record falls short of substantial evidence to support it. You are in your rebuttal, too. Go ahead. Okay, so I'm into my rebuttal time? Yes, you are. Yes, sir. I'll reserve. Yes, sir. Thank you, Your Honor. Sure. Ms. Rajapaksa? Thank you, Your Honor. May it please the Court, my name is Meelakshmi Rajapaksa. I'm counsel for the National Labor Relations Board. I'd just like to begin by responding to the points about right line. The Board's position in this case is that the company did not raise any issue about the specific elements of the general counsel's burden before the Board, and so as a result under Section 10E of the Act, it's foreclosed from getting consideration of those arguments in this Court. Well, what about their sentence? Respondent takes exception. There was sufficient evidence of anti-union animus to justify shifting the burden under right line. Don't you think that's enough? Now, it may just be barely enough, but don't you think it's enough? No, I don't. Respectfully, I don't, Your Honor. That exception is about the sufficiency of the evidence and what the company is attempting to justify the shifting, but there's nothing in that exception about the elements of the right line burden, which is really what the company is attempting to take issue with in this Court. It's under the right line framework. Right. But it doesn't take any issue with what the elements of the right line burden are. Okay, then they say next, and the ALJ is finding that the written warning for discussing union matters was evidence of animus. Don't you think that's close enough? The Board's position is that it's not, and there is a burden and a requirement on the party making exceptions before the Board to make those exceptions with specificity, and so the Board's view is that that exception that Your Honor has just read is not sufficient, wasn't sufficient to put the Board on notice. What the company is attempting to do in this case is essentially leverage comments that were made in a concurring footnote of one of the Board members. It gave the company an idea, and it wants to pursue that idea in this Court. Counsel, isn't the test whether the Board is put on notice, and if a judge understood it, the Board was put on notice? Well, no, Your Honor. Under Section 10E, the party has to urge the objection before the Board. 10E says no objection that was not urged before the Board may be considered by the Court. So really the language of the statute does foreclose what you're talking about, which is a party attempting to use a discussion among Board members to then bring new issues into the case at the appellate level. In terms of the substance of the case on this discharge issue, the Board's position is that the evidence is very clear. It speaks of animus towards the specific employee's union activity. I believe Judge Kelly mentioned the Nichols case. The Board's view is that that case really presents a very different factual context. There, the Court found that there was only general showings of anti-union animus by the employer and no explanation as to why the employer would have targeted the specific employee that it did, and the dots essentially were not connected. In this case, you have really the opposite situation. It is perhaps true that the company didn't have animus as a general matter against unions, but it certainly had animus towards the activities of this particular employee. Go slowly. The ALJ has the flat statement. The General Counsel does not have to prove a connection. Can't think of a broader word. Does not have to prove any connection between the anti-union animus and the specific adverse employment action. You're not defending that, are you? Well, Your Honor, the Board majority did find that there's no specific nexus element in Wright-Line, and so the Board did adopt the view that there's no specific showing of a nexus, and I would just remind the Court, if I can step back a little, that under Transportation Management and Wright-Line, the issue is whether there was sufficient evidence to support an inference of unlawful motivation, and the Board goes through the Wright-Line analysis to determine whether there is enough evidence to support an inference, and in this case, the Board believes there certainly is enough evidence to support an inference. You have an employee who was essentially the instigator of union activity at this facility. He was the originator of the union campaign. He got the union in. You have the employer repeatedly targeting and talking about that activity, and I understand that my colleague has characterized his activity as harassment and bothering, and those words are certainly in the record. Unfortunately for the company, though, the warning that was issued to him did not talk about harassment, did not talk about bothering people, didn't talk about taking time away from work, that working time is for work. All of those points are well taken, but the warning itself said one thing, and it said he was warned for discussing union organizational viewpoints. So I would submit to the Court that even if, Judge Benton, even if there were a causal nexus element, and I think this also speaks to Judge Kelly's concern about looking at the whole record, in this case, there is a nexus. Well, under Transportation Management, because it's the Supreme Court, and they're quoting and talking about right line, so I think it's the main one, doesn't the Supreme Court say the General Counsel has the burden of showing that the employee's conduct was a substantial or motivating factor in the discharge? Yes. And didn't the Board, in this case, say the opposite? No. They didn't. No. They said they agreed with the ALJ that General Counsel's initial burden does not include a nexus element. Right. They wrote those words. Right. And the nexus element is, I mean, the Board's view is that you apply the right line analysis, and the General Counsel, through the initial burden, puts forward evidence to support an inference. So there is no requirement of expressly showing a nexus. That is not, the Board's view is that is not in right line. It's not required by right line. What about Transportation Management when it quotes right line, and it has the sentence I keep quoting? I've read it three times. Right. What does the Board say about that one? The Board embraces, obviously, the Board has cited Transportation Management in support of its application of right line. The Board's view is the substantial motivating factor is shown when the General Counsel comes forward with evidence of protected activity, knowledge by the employer, and animus. How is that? I'm struggling to figure out how that isn't a connection, which is the word that's used in the footnote of the ALJ's opinion. In other words, I'm not sure what the difference between a substantial motivating factor is and one that has a connection to or nexus. The idea of connection can be, it doesn't have to be established by a direct piece of evidence in the record. It can be an inference that is based on protected activity, knowledge, and animus. I think where the Board departs from, the Board majority, for example, departed from the concurring Board member is that there isn't this extra overlay on top of right line to show a nexus. The nexus is really embedded in the existing right line analysis, and all that has to be shown is something to support an inference. I think what the Board is rejecting is this idea that there has to be a specific evidentiary showing of a nexus. You show the nexus through the right line analysis. Does the inference have to rise to the level of a substantial motivating factor? Yes. Okay. Yes. So you're agreeing with the language. You just think using the term inference is a better way to talk about it than saying substantial motivating factor, and that's apparently the Board's position too, huh? Right. Yes, it is, Your Honor, and this is about to fall. Excuse me. That's okay. I also think that it's worth stating that the Court at this stage is not really examining the minutia of what the general counsel showed and then when the burden shifted and so on. The question before the Court is just, is there substantial evidence to support the 8A3 finding? And the 8A3 finding is based on this inference that this discharge was unlawfully motivated. And if I may just recite the evidence, because I do disagree with my colleague in terms of his recitation of facts to an extent, he leaves out that in addition to the warning that expressly targeted this person's union activity, you also have a very suspiciously impulsive decision to discharge Mr. Ghali. So you have an employer who has no rules prohibiting employees from surfing the Internet in a sort of a de minimis way at work who suddenly discharges an employee for supposedly violating some sort of zero tolerance policy for that behavior. The problem is not only is there no rule prohibiting what he did, other employees testified in this hearing that they can and they do have non-work websites open. They stream radio from the Internet, for example. You have an employer who, in the face of the employee's denial that he was doing what they said he was doing, the employer did not conduct an investigation, did not examine his denial on the spot, instead precipitously discharged him and then conducted an investigation after the fact. The company also attempted to add a new justification for the discharge after the fact. And so all of those things that I just mentioned are well recognized indicia of animus. So you not only have the evidence that the general counsel put on as an initial matter, you have circumstantial evidence of animus that came in when the employer attempted to defend its action. So before this court, all of that is relevant as support for the board's 883. Before your time's up, the board, do you defend the per se Johnny Poultry's rule? We do. We do, Your Honor. No other circuit has approved it, right? Several circuits have refused to. The Fourth Circuit in standard Cousa-Thatcher specifically approved it. There is a circuit that approves it? Yes. Yes. The Fourth Circuit has approved it and applied it, I believe, more than once. But 256 and D.C. don't, right? No, that's not true. Oh, I'm sorry, 7. 7's the one that says that. The Seventh Circuit claims all those don't. Right. The, yes. How do you count the noses? Well, I would just like the opportunity, I appreciate, Your Honor, raising this issue. The, I think it's important to keep in mind not only that this is a rule of longstanding, it has been approved and applied in other circuits. I think the rationale for the rule is important for the court to keep in mind. In, when you have an employer who sets out to question employees about union activity in advance of litigation that's about that union activity, you have a special situation and the Board in its expertise has determined that this is a situation where there's an inherent danger of coercion within the meaning of the statute. And again, it is the Board's fault. I'm going to interrupt you again due to your time. And I think it's general, these cases are abbreviated, I hate that. I think it's called general thermo or some such case, a 1981 case of this court. We act like you're supposed to look at five factors. Are you familiar with our case? Yes. Yes. And we act like there's not a per se rule in this circuit. What do you say? Right. I, you know, Your Honor, that this court does apply a multi-factor test for interrogations in general. Again, this, the Board views this specific situation as different and it warrants special treatment. You have an inherent danger of coercion that employees face in this pre-litigation context. They may be, they may feel fear and they may want to abandon their union activity, curtail that activity, lie about that activity. They may be deterred from participating in the Board's process and any kind of investigation. So there are a litany of special considerations. Those are good hypotheticals, but boy, the facts in this case are about the best imaginable for an employer. Well. Kane came forward, you know, he initiated it all. He came forward months earlier. So in what we are talking about now is two interviews just before the hearing in this case. What the Board has said is in this specific context, even though there is an inherent danger of coercion, the Board does understand that employers have to prepare their defense to unfair labor practice allegations. So the Board has created this limited privilege for employers to ask questions about union activity, which is a very fraught area for employers, and has provided clear guidelines, which is something the courts traditionally like. Counsel, what do we do with our Johnny's Poultry decision? I think it was in 1965. Our court didn't enforce the original Johnny's Poultry Board order, which creates the implication that we didn't necessarily agree with the per se rule. There's a leap of logic that has to happen. There are some inferences that have to happen there. But doesn't that support what Judge Benton is saying, that the headwinds are against applying the per se rule? Well, I would say there are at least two circuits that have not, two other circuits reading the Johnny's Poultry decision of this court, that have said that that decision didn't reject in principle the Board's view that these assurances are beneficial, they're necessary to minimize the coerciveness of these interviews. And so if I may return to Judge Benton's point, what the Board has done is it has created this limited privilege, and it understands employers have to ask questions. But it just asks that these employers give employees three assurances. They're very simple and easy to give. And that is the condition on which, under the Board's law, an employer may go forward and question employees in this specific context. In this case, the employer didn't affirmatively tell this employee, Mr. Galley, that his participation in the second interview was voluntary. And in neither... I don't know. He kind of says it's voluntary. Isn't there almost a factual issue here? Because you do a per se rule, you don't make fact findings, right? No, that's not... Right. And so you read what's actually said, goodness gracious. I don't know. Go ahead. Well, the second interview, he did. There is testimony in the record, and it's unrebutted, that he was not told. I mean, these are affirmative statements that the employer has to make under the Board's law. I understand. Per se rule. You can infer it from the circumstances. So the employer didn't affirmatively tell him the second interview was voluntary. The employer also didn't tell him that there would be no negative consequence or reprisal based on his participation or non-participation in either one of the interviews. So in the Board's view, this is a clear violation of Johnny's Poultry, and we would submit to the Court that Johnny's Poultry rule should be upheld. Thank you. Thank you, counsel, for the argument. Mr. Curtis. Just a few brief points in rebuttal. As far as the Johnny Poultry issue goes, this would be one of the worst cases for the Circuit Court of Appeal, Eighth Circuit, to adopt a per se rule because there is not a scintilla of evidence in the record that the interviews with Mr. Cain were coercive in any respect. The notices were given on direct. Mr. Cain said, yes, both times on direct, admitted he knew it was voluntary, admitted that he didn't have to answer the questions. And the Johnny Poultry assurances, and they're good assurances. I mean, they're good public policy reasons to support it so that the employer doesn't engage in coercive tactics, but the record doesn't bear that out here at all. As Your Honor reminded the room, Bill Cain was the guy who came to the employer to begin with to complain about the harassment on the shop floor. Bill Cain was the guy that Darryl Gawley said, come on, let's have it. I mean, he needed no cajoling to come to the employer. But he wasn't told anything about discipline one way or the other. All he's doing is ingratiating. He was, but as far as the record goes, the general counsel bears the burden of proof to prove that he wasn't. And on the record, Your Honor, and I think you point this out, you read that he was browbeat on cross-examination. If there was any coercive testimony by Mr. Cain, it was under the course of rigorous cross-examination of general counsel. Truth finding of cross-examination. It was. And that's why the ALJ, Judge Locke, seeing the demeanor of the witness on direct and cross, decided, yeah, there was no coercion here. That's why in Nichols and other 8th Circuit case law, whenever the board disagrees with the ALJ on factual finding, you've got to take an even closer look, not just substantial evidence, but like a special substantial evidence test applies to that. But if you go through the cross-examination, it's at best ambiguous to support the general counsel's position that there was even a per se violation. He said, yeah, nothing was brought up in that, no, that he wouldn't be disciplined or no action would be taken. The equal inference could be brought that Mr. Cain said, yeah, no one was telling me I'd be disciplined or that action, I mean, I wasn't going to be disciplined, yeah, no one was threatening me. Both times, there's a fair to middle chance that the inference could be drawn either way. But in any event, the general counsel didn't bear its burden of proof on any violation. And for sure, the 8th Circuit case law has consistently adopted a totality of circumstances approach. And then we would submit also that Johnny Poultry assurances and protections don't even apply because the purpose of the interviews wasn't to ask him about any union activities. The employer didn't care. And in fact, at Supplemental Appendix 141, you can see Bill Cain's testimony where Bill Cain says, no, no, I told them about that. He's asked where you asked about union activities. Bill Cain said, I told them they did not ask and they didn't ask. The purpose of that interview was simply to prepare for a defense of an unfair labor practice charge and a few of them to establish the legitimate nondiscriminatory reasons which were being complained about by these particular witnesses and nothing more. As far as one, I know we're not retrying the evidence here, but when- Before your time is up, if you don't mind, could you- The issue of the reinstatement or the back pay, is that right? I don't even know if that's the right word I want to use. It seems to me that it was left open whether in fact back pay would be permissible at a certain point. So can you speak to that? It was, and it was left open in compliance for a number of reasons. Spoliation of evidence, falsehoods, lying under oath after acquired evidence. This was not a de minimis web surfing event. This was running a pecuniary for-profit business on paid company time. What is right, your honor, is the toll manufacturing NLRB decision that they say, hey, in certain cases, the perjury of a claimant that affects the integrity of the process can be denied outright, that remedy of reinstatement and back pay. Now, Judge Scalia in the ABF freight case says, oh, Chevron deference, you know, that's kind of an agency thing. We'd really like it if the agency would enforce the integrity of its process by finding when someone commits perjury, they don't get these remedies. In this case, the issue of whether the agency abused its discretion in not finding perjury and denying outright those remedies in this case is ripe for this court, leaving aside for a later day all of the compliance issues of the appropriateness of those remedies. But you can still bring it up in compliance, right? I can. We can, yes. Yes. We do. We can. We intend to. Any other questions of the panel? Okay. Seeing none, case number 17, actually case number 17-1450 and 17-2198 are submitted for decision. And the court will be in recess for 10 minutes.